UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DERAUGHN BROWN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:13-cv-01515-JAR |
| ) | |
| TERRY RUSSELL, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on remand from the United States Court of Appeals for the Eighth Circuit to consider Petitioner Deraughn Brown's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). Petitioner has also filed a Motion for Entry of Final Resolution (Doc. 72). After an evidentiary hearing, Petitioner's § 2254 petition is **DENIED** and this action is **DISMISSED with prejudice**. Petitioner's Motion is **DENIED as moot**.

## I.    Introduction and Background

In October 2007, Petitioner was indicted on four felony counts arising out of the August 6, 2007, shooting of Kevin Hodges: one count of assault in the first degree; one count of unlawfully discharging a firearm from a motor vehicle; and two counts of armed criminal action (Resp. Ex. B at 92-93). In January 2009, after considering the advice of counsel ("trial counsel"), Petitioner rejected the State's plea offer of a twenty-five-year sentence and entered a blind plea of guilty on all four counts (*Id.* at 94-96, 105). At the plea hearing, Petitioner admitted to the following facts: On August 6, 2007, Petitioner and Hodges had a disagreement in a gas station parking lot. At some point during the argument, Hodges got out of his car and approached Petitioner. Petitioner, while still in the driver's seat of his car, shot Hodges in the shoulder,

causing him serious physical injury and causing a substantial risk of death and protracted loss of use of his arm (*Id.* at 112-13). In response to questioning, Petitioner indicated that he had been afforded sufficient opportunity to discuss the case with trial counsel, that trial counsel was informed of all the facts she needed to adequately advise Petitioner of all aspects of the case, including his legal rights, that trial counsel had done so, and that Petitioner was satisfied with trial counsel's services (*Id.* at 108-09).

The court sentenced Petitioner to concurrent terms of eighteen years in prison on each count. After imposing the sentence, the court again inquired of Petitioner whether he was satisfied with trial counsel's representation. This time, Petitioner stated that he was disappointed with "everything" and the "whole situation," and indicated that trial counsel had not investigated all of the witnesses to the shooting (*Id.* at 100-04).

Thereafter, Petitioner filed a pro se post-conviction motion to set aside his conviction, raising four claims, including that trial counsel had been ineffective by failing to interview a number of key witnesses and by misadvising Petitioner about the length of the sentence he would receive if he pled guilty (*Id.* at 5-11). Petitioner was appointed counsel ("motion counsel"), who amended his post-conviction motion to raise just two claims: that Petitioner's convictions violated double jeopardy and that trial counsel was ineffective for misadvising Petitioner as to the sentence he would receive upon his guilty plea. Motion counsel decided not to advance Petitioner's claim that trial counsel had been ineffective by failing to investigate witnesses to the shooting (*Id.* at 12, 17-47).

The state court held an evidentiary hearing on both claims (Resp. Ex. B at 49-55). Regarding the ineffective-assistance claim, trial counsel testified that she and Petitioner had discussed the government's initial plea offer of a twenty-five year sentence but that neither of

them believed it was a substantial improvement over the risk of going to trial (Resp. Ex. A at 11). Petitioner suggested to trial counsel that Brianna Wiley, who had been the passenger in Petitioner's car on the night of the shooting, would be an independent witness because he and Wiley were not well acquainted (*Id*. at 11-12). Trial counsel testified that the government's initial offer was even less attractive based on her belief that Wiley would be a strong defense witness (*Id*.). To that end, trial counsel testified that she and Petitioner discussed the possibility of seeking the lesser-included offense of assault in the second degree, based on self-defense (*Id*. at 24-25). She concluded that Petitioner could not prevail at trial on a complete self-defense theory because there were "a lot of initial aggressor problems" posed by Petitioner's introduction of a loaded weapon into what might have been a mere "fist fight," but she believed that Petitioner may have been able to argue imperfect self-defense based on "sudden passion," and planned to proceed to trial on that theory, relying on Wiley's and Petitioner's testimony (*Id*. at 25).

However, when trial counsel endorsed Wiley as a witness, the government informed trial counsel that it had intercepted hundreds of jailhouse phone calls in which Petitioner was discussing his case with Wiley and directing her on what to say and provided records showing that Wiley had visited Petitioner in jail dozens of times (*Id*. at 16, 29-30). In addition, trial counsel testified that Petitioner had performed very poorly during mock testimony and specifically struggled to give credible answers regarding his relationship with Wiley (*Id*. at 15). On those bases, trial counsel concluded that neither Wiley nor Petitioner was a viable witness in support of a sudden-passion defense (*Id*. at 17-19). Lacking any credible witness to Petitioner's claim of sudden passion, trial counsel advised him to avoid trial by accepting a blind plea, believing that the court would impose a sentence shorter than twenty-five years. (*Id*. at 17-19).

Petitioner testified that he told trial counsel to reject the government's twenty-five-year offer because he believed he had shot Hodges in self-defense but that trial counsel never communicated to him her concerns about proceeding to trial on a sudden-passion theory (*Id.* at 38, 42-43, 45). He alleged that trial counsel promised he would only serve three to five years in prison if he pleaded guilty (*Id.* at 45-46). Trial counsel testified that Petitioner may have asked her about pleading to a lesser-included offense—such as second-degree assault based on sudden passion—but that she advised him that, "in a blind plea situation, you have to plead to whatever's on the table, there's not going to be an amendment or reduction of the charge, there can't be, so that's a moot conversation" (*Id.* at 5-35). In any event, Petitioner testified that he only agreed to enter a blind plea because of trial counsel's assurances regarding his sentence (*Id.* at 39-42).

The state court found credible trial counsel's testimony that Petitioner had no viable sudden-passion defense (Resp. Ex. B at 53). The state court therefore found not credible Petitioner's testimony that he would have gone to trial on a sudden-passion defense if trial counsel had not misled him as to the length of his sentence (*Id.*). In addition, the state court noted that Petitioner had represented under oath at his change-of-plea hearing that he was completely satisfied with trial counsel's advice and representation (*Id.*). The state court concluded therefore that trial counsel's advice to forgo any trial based on a sudden-passion theory and accept the blind plea was reasonable. The state court denied Petitioner's post-conviction motion, and the Missouri Court of Appeals summarily affirmed the denial. *See Brown v. State*, 395 S.W. 3d 83, 2013 WL 1412106 (Mo. App. 2013) (per curiam).

Petitioner then filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which he later supplemented (Docs. 1, 5). He alleged again that he shot Hodges in

4

defense of himself and Wiley. The police report of the incident indicated that officers had seized as evidence an orange plastic handsaw with an eleven-inch metal blade found at the scene (Doc. 1-1 at 17). According to Petitioner, Hodges was "brandishing" the saw as he approached Petitioner's car, and Petitioner shot Hodges out of "terror," in self-defense, and as a result of "sudden passion" (*Id.* at 9-10).

In his petition, Petitioner advanced a single claim involving two instances of ineffective assistance of trial counsel (*Id.* at 4). For the first time, Petitioner argued that trial counsel was ineffective for failing to adequately explain or pursue a potentially meritorious defense based on "sudden passion arising from adequate cause" and that she was ineffective for failing to interview Henderson, a clerk at the gas station where the shooting took place and who would have been a key witness in support of that defense (*Id.* at 4). Attached to Petitioner's memorandum was an affidavit dated January 4, 2013, bearing Henderson's name, and attesting to the following:

> I witnessed the incident that occurred at my job at the Mobil gas station on August 6, 2007 while wiping windows. I noticed two cars with two or three young people who were confronting one another at the intersection of the Mobil station. At that very moment two guys exited the back doors of the Ford car and began circling around behind the dark blue car. There I saw the driver of the Ford car, a black guy, exit out with a chrome colored object in his hand approaching the dark blue vehicle in a threatening manner. I heard at least one shot fired and seen the dark blue car drive off.
>
> If I had been contacted to appear in court to testify as a witness who observed this situation, I would have come.

(Doc. 1-1 at 19). Petitioner asserted that trial counsel would have recommended going to trial on a sudden-passion theory if trial counsel had interviewed Henderson because she would have recognized that Henderson was a viable witness in support of the theory (Docs. 9, 21). Petitioner conceded that he had procedurally defaulted his claim by failing to raise it in his amended post-

conviction motion but asked the Court to excuse the default under *Martinez v. Ryan* on the ground that motion counsel was ineffective for failing to consult with him before amending his motion (*Id.* at 5, 14). 132 S. Ct. 1309, 1320 (2012) ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.").

Respondent argued that Petitioner was not entitled to habeas relief because trial counsel had reasonably determined that she had no viable witness to support a sudden-passion defense. Respondent further argued that trial counsel's decision not to interview Henderson was reasonably based on the handwritten Dellwood Police Department Voluntary Statement, signed by Henderson and dated August 2, 2007, in which Henderson wrote:

> I witnessed 2 cars with 2-3 each of young people who [were] confronting with one another over a certain issue or dispute . . . . [T]he cars [of] both parties arrived [at the gas station] . . . with the 2 parties exchanging words while one was pumping gas, and the other party was not, just residing to side still in verbal dispute. . . . I was working at my job [at the gas station] wiping windows. I recently heard 1-2 shots, and then saw suspect in car drive off, not knowing what direction in which they were headed in.

(Doc. 36-1). Respondent also attached copies of an Investigative Report prepared by an officer of the Dellwood Police Department and dated August 7, 2007, summarizing an interview of Henderson as follows: "Henderson stated while outside washing windows, he heard approximately one to two shots and then observed the suspect's vehicle, drive off in an unknown direction. Henderson observed the suspect's vehicle to be occupied by one black male and one black female" (Docs. 36-2 at 6; 36-3 at 6). Respondent further argued that, even assuming that trial counsel had been ineffective for not interviewing Henderson, Petitioner could not show that

6

he was prejudiced by such failure because it was unlikely that he would have proceeded to trial and risked higher sentences on the other three counts (Doc. 7).

This Court denied the petition on the ground that Petitioner had defaulted his ineffective-assistance-of-trial-counsel claim. *Brown v. Russell*, No. 4:13-CV-01515-JAR, 2016 WL 5661603, at *4 (E.D. Mo. Sept. 30, 2016), *vacated and remanded sub nom. Brown v. Russell*, No. 16-4211, slip op. (8th Cir. Nov. 16, 2016). The Court held that motion counsel's decision not to pursue the claim was reasonable. *Id*. at *4-5. Without proving ineffective assistance of motion counsel, Petitioner could not excuse his default. *See Martinez*, 132 S. Ct. at 1320.

The Court alternatively held that Petitioner could not show that he was prejudiced by trial counsel's failure to explain the sudden-passion defense. *Brown*, 2016 WL 5661603, at *5-6. The Court found that trial counsel reasonably concluded that a sudden-passion claim theory was strategically unviable because neither Petitioner nor Wiley were credible. *Id*. Thus, the Court held, even if trial counsel had explained her concerns, Petitioner was unlikely to succeed at trial and therefore was not prejudiced. *Id.* at *6 (citing *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984) (holding that to state a claim of ineffective assistance of trial counsel,the Petitioner must demonstrate both that his counsel's performance was deficient and that he was prejudiced by that performance).

Petitioner appealed. The Eighth Circuit granted a certificate of appealability, vacated the Court's judgment, and remanded the case. *Brown*, No. 16-4211, slip op. at 1-2; (Doc 47). The Eighth Circuit directed the Court on remand to:

> [A]ddress [Petitioner's] claims that his trial counsel was ineffective in failing to investigate a potential witness (Keith Henderson), and failing to advise [Petitioner] regarding a possible "sudden passion" defense based on testimony that Mr. Henderson would have provided. We direct the district court to consider [Petitioner's] assertion that—if trial counsel had investigated the witness and provided advice regarding a "sudden passion" defense—counsel likely would

7

> have made a different plea recommendation, and [Petitioner] likely would have proceeded to trial, because a successful "sudden passion" defense ultimately could have had a significant favorable impact on [Petitioner's] parole eligibility.

*Id.* at 2.

On September 13, 2017, the Court held an evidentiary hearing. Petitioner, trial counsel, motion counsel, and Henderson each testified. Petitioner then filed a post-hearing brief (Doc. 69). For the following reasons, the Court will deny the petition.

## II. Legal Standard

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To state a claim of ineffective assistance of counsel, Petitioner must demonstrate both that his counsel's performance was deficient and that he was prejudiced by that performance. *Strickland*, 466 U.S. at 687. Deficient performance means counsel's conduct fell below the conduct of a reasonably competent attorney. *Id.* There is a strong presumption that counsel's "challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). To establish prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Federal habeas review of a *Strickland* claim is highly deferential because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotations and citations omitted).

Where, as here, a petitioner entered a guilty plea, *Strickland*'s prejudice requirement focuses on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Matthews v. United States*, 114 F.3d 112, 114 (8th Cir. 1997).

### III.  Initial Matters

At the outset, the Court is forced to conclude that Petitioner and/or someone acting on his behalf committed a fraud upon the court by filing a false affidavit. At the evidentiary hearing before the Court, Respondent presented an affidavit submitted by Petitioner that bore Henderson's name and stated that Petitioner responded to Hodges's threat. (Hearing Tr. at 16-17). When asked, Henderson testified that he did not write the affidavit, did not sign it, and did not see what it says he saw (*Id.* at 28, 33). He testified that he had never been contacted by or corresponded with Petitioner (*id.* at 29), and that he had recently seen the affidavit for the first time when an investigator from the Missouri Attorney General's office asked him about it leading up to the hearing (*id.* at 28-29). Henderson further testified that he was in fact facing away from the parking lot, washing the outside of the store's windows, when the shooting took place (*Id.* at 31, 33). He saw nothing but Petitioner's car speeding away—precisely what he told police in 2007 (*Id.* at 74).

The affidavit is so clearly forged that the Court can only conclude that it was an intentional attempt to mislead the Court. Petitioner compounded that fraud by continuing to argue the significance of the fraudulent affidavit in his appeal to the Eighth Circuit. Indeed, the Eighth Circuit's judgment remanding the case is based in part on the effect of "testimony that

9

Mr. Henderson would have provided." *Brown*, No. 16-4211, slip op. at 2. In light of Henderson's testimony at the evidentiary hearing, it is clear to this Court that whomever fabricated the affidavit intended to mislead this Court and the Eighth Circuit into granting relief to which Petitioner is not entitled. The Court notes that Petitioner's current counsel was appointed after the affidavit was proffered by Petitioner.

Petitioner's counsel also attempted at the beginning of the evidentiary hearing to waive any claim that trial counsel was ineffective for failing to interview Henderson (Hearing Tr. at 2-3), which the Court notes raises questions about counsel's knowledge of the fraudulent affidavit. Thus, Petitioner states in his post-conviction brief that the only habeas claim pending before this court is "trial counsel's failure to explain to petitioner that he had a viable sudden passion defense to the assault in the first degree charge" (Doc. 69 at 1). Despite Petitioner's asserted waiver, and in light of the Eighth Circuit's express directive (Doc. 46), the Court will consider the merits of both of Petitioner's ineffective-assistance-of-trial-counsel arguments: "if trial counsel had investigated the witness and provided advice regarding a 'sudden passion' defense[,] counsel likely would have made a different plea recommendation, and Mr. Brown likely would have proceeded to trial." *Brown*, No. 16-4211, slip op. at 2.

## IV. Procedural Default

In its prior order, the Court found that Petitioner had defaulted his ineffective-assistance-of-trial-counsel claim by failing to raise it in his post-conviction motion (Doc. 37 at 8-9). At the evidentiary hearing before this Court, Petitioner's counsel asserted that the Eighth Circuit's remand implicitly includes a finding that Petitioner's default was excused under *Martinez* and that therefore allowing motion counsel to testify was inappropriate (Doc. 76 [hereinafter Hearing Tr.] at 37-43).

10

The Court recognizes that the Eighth Circuit's judgment directs it to address the merits of Petitioner's ineffective-assistance-of-trial-counsel arguments, which strongly implies a finding that the claim was not defaulted (Doc. 46). However, the Court also notes that the Eighth Circuit cited *Martinez* when granting a certificate of appealability, which requires a determination only that jurists of reason could *debate* the district court's conclusion that the claim was defaulted. *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000). Moreover, the *Martinez* analysis requires the Court to examine the merits of Petitioner's underlying ineffective-assistance-of-trial-counsel claim to determine whether motion counsel's decision not to raise it amounted to ineffective assistance sufficient to excuse the would-be default. Thus, as this Court understands it, the Eighth Circuit's decision to grant a certificate of appealability, vacate the case, and remand with instructions to consider the merits of Petitioner's ineffective-assistance-of-trial-counsel claims did not necessarily preclude this Court from considering the *Martinez* question. In addition, the Court notes that neither the Eighth Circuit nor this Court had the benefit of motion counsel's testimony when considering the *Martinez* issue in the first instance.

To excuse a default under *Martinez*, Petitioner must show that the default was caused by motion counsel's ineffective assistance in failing to raise his ineffective-assistance-of-trial-counsel claim in his post-conviction motion. 133 S. Ct. at 1320; *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In this context, Petitioner must show that motion counsel "ignored issues [that were] clearly stronger than those presented." *Link v. Luebbers*, 469 F.3d 1197, 1205 (8th Cir. 2006) (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)); *Strickland*, 466 U.S. at 687.

Motion counsel testified that she considered the ineffective-assistance-of-trial-counsel claims Petitioner had raised in his pro se motion but decided not to raise them in the amended motion because, in her judgment, she could not prove them at an evidentiary hearing (Hearing

11

Tr. at 37-43). Petitioner's pro se post-conviction motion did not include Henderson in the list of witnesses trial counsel should have interviewed (Resp. Ex. B at 6). Motion counsel testified that Petitioner did not mention Henderson to her and that she had no affidavit from Henderson at the time she filed Petitioner's amended post-conviction motion (Hearing Tr. at 41). Instead, Petitioner wanted to discuss Wiley and why trial counsel had not investigated her (*Id*. at 43). According to motion counsel, Petitioner knew about the sudden-passion defense and had discussed it with trial counsel before pleading guilty (though trial counsel may have used the less common term "imperfect self-defense") (*Id*. at 48). Still, motion counsel testified that Petitioner was mostly concerned about his sentence, and that to the extent he was disappointed with trial counsel's strategy, it was based on her failure to go farther with Wiley (*Id* at 42).

The Court finds motion counsel's testimony credible and therefore concludes that her decision not to raise in his post-conviction motion an ineffective-assistance-of-trial-counsel claim based on the failure to interview Henderson or to pursue a sudden-passion defense was strategically reasonable. *See Strickland*, 466 U.S. at 690-91 ("when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether"). Of note, motion counsel had no reason to raise any claim involving trial counsel's investigation of Henderson because Petitioner never mentioned the witness to motion counsel. Likewise, Petitioner told motion counsel that trial counsel should have pursued a sudden-passion defense based on the testimony of Wiley, but, as explained more fully below, trial counsel's decision not to proceed on a sudden-passion theory was eminently reasonable given the significant impeachment evidence against Wiley and motion counsel was not obligated to raise a claim lacking in merit. *Link*, 469 F.3d at 1205.

The Court therefore finds that Petitioner cannot show the cause and prejudice necessary to excuse the default of his ineffective-assistance-of-trial-claim under *Martinez*. However, as stated above, the Court will address the merits of both alleged instances of ineffective assistance of counsel, as directed by the Eighth Circuit.

## V. Merits

The root of Petitioner's habeas claim is that if trial counsel had interviewed Henderson, she would have advised Petitioner to go to trial on a sudden-passion defense believing that he would be convicted of the lesser-included offense of second-degree assault. In Missouri, first-degree assault is a Class A felony punishable by ten years to life in prison. Mo. Rev. Stat. §§ 565.050.2. However, a defendant who establishes that he committed an assault while acting under "sudden passion arising from adequate cause" is guilty of second-degree assault—a Class C felony punishable by no more than seven years in prison. Mo. Rev. Stat. §§ 565.060.1(2), 565.060(3), 558.011. "Sudden passion" is defined as "passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation." Mo. Rev. Stat. § 565.002.7. "Adequate cause" is statutorily defined as "cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control." Mo. Rev. Stat. § 565.002.1. Second-degree assault is a lesser-included offense of first-degree assault. *State v. Ramirez*, 479 S.W.3d 640, 646 (Mo. App. 2015). Significantly, first-degree assault convictions carry a requirement that second-degree assault convictions do not: that the defendant must serve 85% of his sentence before he is parole eligible.

Petitioner asserts that Henderson would have testified that he saw Hodges exit his car and approach Petitioners' car with an "11 inch metal blade handsaw," if only trial counsel had interviewed him (Doc. 1-1 at 11). In support, he attached the forged affidavit purportedly detailing that Henderson would have testified that Hodges had approached Petitioner "in a threatening manner" while holding a "chrome colored object" (*Id*. at 19). At the evidentiary hearing, Petitioner's trial counsel testified that she could not remember Petitioner asking her to investigate Henderson (Hearing Tr. at 62). In addition, she testified that she had independently decided not to interview Henderson because his handwritten and signed statement in the police report suggested he had seen little, if anything, of use (Hearing Tr. at 62, 74). In any event, she believed that Henderson's testimony would not have been helpful in bolstering a sudden-passion defense because she could not present a corroborating witness and because it contradicted the evidence (*Id.*at 75). Trial counsel could not rely on Petitioner's testimony because, throughout her multiple meetings with him, his version of events changed dramatically (*Id.* at 51-56). At one point, counsel obtained video and photographic evidence that directly contradicted Petitioner's assertions (*Id.* at 55-56). Likewise, Petitioner performed poorly during counsel's mock testimony (*Id.* at 73). Nor was Wiley a viable witness; Petitioner misled trial counsel on multiple occasions as to his relationship with Wiley and how to contact her, and when trial counsel finally did get in touch with Wiley and tried to use her testimony as leverage for a favorable plea agreement, prosecutors revealed recorded jailhouse phone calls in which Petitioner was attempting to fabricate evidence by coaching Wiley on what to say (*Id.* at 60-61).

In light of such a significant risk of impeachment, trial counsel's strategic decision not to put Petitioner or Wiley on the stand was reasonable; without a corroborating witness and in the face of contradictory evidence, a sudden-passion defense was not feasible, Henderson's alleged

testimony notwithstanding. Ultimately, as the Court learned at the evidentiary hearing, the affidavit was fabricated. It is clear to the Court that interviewing Henderson would not have helped Petitioner's case and the Court therefore concludes that trial counsel's decision not to interview Henderson was completely reasonable and could not possibly have prejudiced Petitioner.

Trial counsel also testified that she had investigated Petitioner's potential sudden-passion defense and had decided against it. (Hearing Tr. at 59-62). In light of the overwhelming evidence of Petitioner's guilt, his poor performance during mock-testimony, and the impeachment evidence against both him and the primary defense witness, counsel decided it was an unwinnable strategy and advised Petitioner to enter a blind plea (*See id.* at 65). She correctly predicted that Petitioner would receive a more lenient sentence than what the prosecution was offering in plea negotiations if he instead entered a blind plea. *See Ford v. Lockhart*, 904 F.2d 458, 462 (8th Cir. 1990) (counsel provided reasonably effective assistance of counsel by properly considering the prospect of plea bargaining, the expectation or hope of a lesser sentence, and the convincing nature of the evidence against the accused). Like the state court, this Court finds trial counsel's testimony truthful and credible and supported by the objective evidence.

When motion counsel testified, she confirmed that Petitioner had discussed the sudden-passion defense with trial counsel and that he did not mention Henderson to her (Hearing Tr. at. 40, 48). For her part, motion counsel determined that trial counsel's failure to pursue the theory at trial was not unreasonable. As stated above, the Court finds motion counsel's testimony to be true and credible and supported by the objective evidence.

Petitioner testified that he had told trial counsel to investigate Mr. Henderson after seeing his information in the police report and "after Brianna Wiley went south" (*Id*. at 20-21), but that trial counsel refused to discuss going to trial on a sudden-passion theory (Hearing Tr. at 12). Petitioner testified that trial counsel's refusal to discuss sudden passion left him with no choice but to plead guilty despite his belief that he shot Hodges while acting in defense of himself and Wiley (*Id*. at 12.). As for the affidavit, Petitioner testified that he had written to Henderson from jail asking if he had any information regarding the shooting and had received the affidavit in response (*Id*. at 18). Like the state court, this Court finds Petitioner's testimony not truthful and not credible and not supported by the objective evidence. Nearly everything Petitioner said at the evidentiary hearing is contradicted by trial counsel, motion counsel, or Henderson. Of course, the Court's conclusion that Petitioner lacks credibility is bolstered by the fact that he attempted to fabricate evidence not once—by coaching Wiley from jail over the phone—but twice—by filing the fraudulent Henderson affidavit in two federal Courts.

## VI. Conclusion

The Court concludes that Petitioner is not entitled to habeas relief. First, the Court finds that Petitioner's sole claim is defaulted. Second, the Court finds that trial counsel's decision not to interview Henderson was reasonable in light of his police statement and that counsel reasonably determined that she could not present a viable sudden-passion defense at trial. Thus, the Court finds that trial counsel was not ineffective for advising Petitioner that he would be better served by accepting a blind plea than going to trial. In light of the Court's denial of the petition, the Court concludes that Petitioner's Motion for Entry of Final Resolution (Doc. 72), is moot.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Deraughn Brown's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Entry of Final Resolution (Doc. 72), is **DENIED as moot**.

Dated this 30th day of April, 2018.

_____
**JOHN A. ROSS
UNITED STATES DISTRICT JUDGE**